UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE SALVADOR MORENO,<br><br>　　　　　　Petitioner,<br>vs.<br><br>BILL GORE, SAN DIEGO COUNTY SHERIFF, et al.<br><br>　　　　　　Respondents. | Case No. 13cv2097-WQH (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND ORDER DENYING MOTION TO APPOINT COUNSEL**<br><br>[ECF Nos. 1 & 3] |

This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

On September 6, 2013, Petitioner, a state prisoner proceeding *pro se* and *in forma pauperis*, commenced these habeas corpus proceedings pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner challenges the validity of his state court conviction for assault by means of force likely to produce great bodily injury. Id. Respondent filed an Answer and Points and Authorities on January 27, 2014. ECF No. 9 & 9-1. Petitioner filed a Traverse on February 5, 2014. ECF No. 11.

This Court has considered the Petition, Answer, Traverse, and all supporting documents filed by the parties. For the reasons set forth below, this Court **RECOMMENDS**

that Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts regarding Petitioner's crimes are taken from the Court of Appeal, Fourth Appellate District, Division One, of the State of California affirmation of the judgment of the Superior Court of San Diego County. <u>People v. Moreno</u>, Super. Ct. No. SCD226640, Lodgment 7.

> When the events in this case took place, Moreno and the victim were both inmates at the San Diego County central jail facility. They were both housed in the administrative segregation section.
>
> On February 21, 2010, Moreno was outside of his cell in the day room area of the unit. The victim was still inside his separate cell. When the doors of the cells are closed there is apparently a gap between one edge of the door and the wall. On this occasion, Moreno approached the victim's cell and engaged the victim in conversation. Moreno had a cup of hot water with him at the time.
>
> Moreno was able to persuade the victim to get close to the door so he could hear Moreno. When the victim pressed his face against the gap in the door, Moreno threw the cup of hot water onto the victim's face. When he was hit with the hot water the victim screamed in pain and called for help.
>
> After they completed their security check, sheriff's deputies escorted the victim to the jail medical facility.
>
> The medical examination of the victim established he was in some pain and had evidence of burns to his face. The symptoms included redness, swelling and some blistering. The examining doctor concluded that the victim had suffered first and second degree burns to his face and believed the water thrown onto his face must have been at least 150 degrees Farenheit.
>
> Moreno did not present a defense and counsel admitted Moreno committed the assault. Moreno simply argued the force used was not likely to cause great bodily injury as required for the charged aggravated assault. The jury convicted Moreno of assault with force likely to cause great bodily injury, but found not true the allegation that Moreno personally inflicted great bodily injury.

Lodgment 7 at 2-3.[1]

On March 9, 2011, a jury found Petitioner guilty of the crime of assault with force likely to produce great bodily injury. Lodgment 2, Vol. 1 at 198. However, the jury found

---

[1] This Court presumes the state court's factual determinations to be correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254 (e) (1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003); <u>see also</u> <u>Parke v. Raley</u>, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).

"not true" the allegation that Petitioner inflicted great bodily injury on the victim. Id. Petitioner admitted allegations that he had three strike convictions, two prison prior convictions, and two serious prior convictions. On July 18, 2011, the trial court sentenced Petitioner to twenty-five years to life in prison. Id. at 165.

On January 23, 2012, Petitioner appealed his conviction to the California Court of Appeal, Fourth Appellate District, Division One, arguing that there was insufficient evidence to support his conviction for aggravated assault, and that the trial court erred in denying Petitioner's motion for new trial based on juror misconduct. Lodgment 4. In an unpublished opinion filed June 26, 2012, the Court of Appeal affirmed the judgment. Lodgment 7. Petitioner subsequently filed a petition for review in the California Supreme Court, which was summarily denied without comment or citation to authority on September 21, 2012. Lodgments 8 & 9. Petitioner did not seek habeas corpus relief in state court.

On September 6, 2013, Petitioner filed the instant petition asserting the same two claims he raised in his state court appeals, as well as an unexhausted claim alleging that his trial counsel rendered ineffective assistance. ECF No. 1. On October 1, 2013, the Court notified Petitioner that his claim for ineffective assistance of counsel appeared to be unexhausted, and that his petition was subject to dismissal as a "mixed petition." ECF No. 5. Petitioner formally abandoned his unexhausted ineffective assistance of counsel claim on October 4, 2013. ECF No. 6.

## SCOPE OF REVIEW

Title 28, United States Code, section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West 2012).

The petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C.

§ 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2012). In making this determination, a court may consider a lower court's analysis. Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (authorizing a reviewing court to look through to the last reasoned state court decision). Summary denials are presumed to constitute adjudications on the merits unless "there is reason to think some other explanation for the state court's decision is more likely." Harrington v. Richter, 131 S.Ct. 770, 784-785 (2011).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413). "[A] federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Id. at 75-76 (citations and internal quotation marks omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the

Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

If the state court provided no explanation of its reasoning, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington, 131 S.Ct. at 786. In other words, a federal court may not grant habeas relief if any fairminded jurist could find the state court's ruling consistent with relevant Supreme Court precedent.

Finally, habeas relief also is available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (1996); Wood v. Allen, 130 S.Ct. 841, 845 (2010). A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were objectively unreasonable in light of the evidence presented in state court. See Miller-El, 537 U.S. at 340; see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable). This Court will presume that the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465, 473-474 (2007).

## DISCUSSION

Petitioner asserts two grounds for relief. ECF No. 1. First, Petitioner contends that there was insufficient evidence to support his conviction for assault with force likely to cause great bodily injury. Id. at 6-7. Second, Petitioner alleges that the trial court erred in denying his motion for a new trial based on juror misconduct. Id. at 8-9. Respondents contend that the state courts reasonably and properly denied Petitioner's claims for relief. ECF No. 9-1 at 13-25.

A. **Sufficiency of the Evidence**

Petitioner argues that there was insufficient evidence to support his conviction that he assaulted the victim with force likely to produce great bodily injury because the victim did not suffer a sufficiently serious injury. ECF Nos. 1 at 6-7, 27-28; 11 at 1-2. Respondents contend that the state court's decision was not contrary to, or involved an unreasonable application of, clearly established federal law. ECF No. 9-1 at 16.

The California Supreme Court denied the petition without citation of authority so this Court must "look through" the silent denial to consider the appellate court's reasoning. Ylst, 501 U.S. 804 n.3. In denying the appeal, the appellate court stated:

> Moreno makes a straightforward, but unpersuasive claim which, simply stated, is that since the jury found the great bodily injury allegation to be not true, the jury must have only found him guilty of the misdemeanor crime of simple assault. As Moreno recognizes, assault with force likely to cause great bodily injury is an inchoate offense that focuses on the nature of the force used, rather than upon the injury. People v. Colantuono, 7 Cal.4th 206, 216 (1994). For some reason, which frankly escapes us, Moreno seems to contend that where the "assault [is] fully consummated, and the jury determined the force actually used did not cause great bodily injury" that of necessity the force used was "not likely to cause great bodily injury." Such argument is contrary to established law, and thus we reject it.
>
> When we consider a claim for insufficient evidence, we review the entire record in the light most favorable to the trial court decision. We do not make credibility determinations and we do not reweigh the evidence. Our question is simply whether there is sufficient substantial evidence from which a reasonable jury could find each element of the offense to have been proved beyond a reasonable doubt. People v. Johnson, 26 Cal.3d 557, 576 (1980); People v. Staten, 24 Cal.4th 434, 460 (2000). Assault is an unlawful attempt, coupled with a present ability to commit a violent injury upon another. Cal. Penal Code Section 240. Assault is aggravated when the basic crime is coupled with another element. In this case the additional element is the use of force, which is likely to produce great bodily injury. Cal. Penal Code Section 245, subd. (a)(1). The focus of section 245, subdivision (a)(1), is the force used, not on whether an injury actually occurred. People v. Roberts, 114 Cal.App.3d 960, 964 (1981); People v. Colantuono, 7 Cal.4th at 216; People v. Aguilar, 16 Cal.4th 1023, 1028 (1997).
>
> Applying the appropriate legal standards, it is clear there is sufficient evidence to support the jury verdict. Moreno threw very hot water onto the victim's face. Medical testimony showed that at such temperature hot water could have caused second degree burns and possible scarring. The fact that the actual injury inflicted was not all that could have resulted from Moreno's actions does not detract from the jury's reasonable conclusion that such act was "likely" to produce great bodily injury. The fact the degree of injury turned out to be lesser does not detract from the jury's finding. Had Moreno thrown boiling hot water or acid at the victim's face, but had fortuitously

> missed, that would not change the nature of the force used. Accordingly, we reject Moreno's claim that the evidence did not prove aggravated assault.

Lodgment 7 at 3-5 (citations altered for formatting).

The clearly established federal law regarding sufficiency of the evidence claims in the criminal context is set forth in Jackson v. Virginia, 443 U.S. 307 (1979). Jackson claims face a high bar in federal habeas proceedings. Coleman v. Johnson, 132 S.Ct. 2060, 62 (2012). In Jackson, the Court held that the Fourteenth Amendment's Due Process Clause is violated, and an applicant is entitled to habeas corpus relief, "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. In making this determination, habeas courts must respect "the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004) (citing United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.1992)). "Although it might have been possible to draw a different inference from the evidence, [a federal habeas court is] required to resolve that conflict in favor of the prosecution." Ngo v. Giurbino, 651 F.3d 1112, 1114-15 (9th Cir. 2011); see also Coleman, 132 S.Ct. at 2062. (stating that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'") (quoting Cavazos v. Smith, 132 S.Ct. 2, 4 (2011) (per curiam)); and Jackson, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution"). Federal habeas courts also must analyze Jackson claims "with explicit reference to the substantive elements of the criminal

offense as defined by state law." Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) (quoting Jackson, 443 U.S. at 324 n.16). When assessing the evidence presented at trial, a reviewing court must conduct a thorough review of the state court record. Jones v. Wood, 114 F.3d 1002, 1013 (9th Cir. 1997).

The Ninth Circuit has made clear that "[a]n additional layer of deference is added to this standard by 28 U.S.C. § 2254(d), which obliges [Petitioner] to demonstrate that the state court's adjudication entailed an unreasonable application of the quoted Jackson standard." Briceno v. Scribner, 555 F.3d 1069, 1078 (9th Cir. 2009) (citing Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005)). In Allen, the Ninth Circuit first reviewed the standard of review applied by the state appellate court to a sufficiency of the evidence claim, and found that although the state court did not cite to the relevant federal case law, "such a citation is not required 'so long as neither the reasoning nor the result of the state-court decision contradicts' Supreme Court precedent." Id. at 1274 n.12, quoting Early v. Packer, 537 U.S. 3, 8 (2003). Accordingly, it falls to this Court to determine whether the state appellate court opinion here "reflected an unreasonable application of Jackson . . . to the facts of this case." Juan H., 408 F.3d at 1275.

This Court's review of the trial record indicates that there was substantial evidence supporting the jury's determination that Petitioner assaulted the victim with force likely to produce great bodily injury. At trial, the medical doctor who treated the victim following the incident testified that given the nature of the victim's burns, the water temperature likely was "greater than 150 degrees" when it hit the victim's face and that water at any temperature greater than 130 degrees is capable of causing second degree burns and scalding. Lodgment 1, Vol. 5 at 291, 303-304. In addition, the victim testified that Petitioner told the victim to come to the front of his cell, and then threw hot water at the left side of the victim's face. Lodgment 1, Vol. 4 at 247-260. The victim further testified that his face was "burning" and "in pain" immediately after being hit with water. Id. at 255. From this testimony, the jury reasonably could have determined that Petitioner's decision to throw extremely hot water on the victim's face when the victim was so close to Petitioner

was likely to cause great bodily injury. The validity of this determination stands even if the victim did not actually sustain great bodily injury.

The jury's determination, therefore, was not unreasonable and the state court's analysis and decision denying the sufficiency of evidence claim was not "contrary to or an unreasonable application of Federal law." 28 U.S.C. § 2254(d)(1). For these reasons, this Court finds Petitioner's sufficiency of the evidence claim to be without merit and **RECOMMENDS** that the first claim be **DENIED**.

**B.   Juror Misconduct**

Petitioner asserts in his second claim that the trial court erred in denying his motion for a new trial based on juror misconduct. ECF Nos. 1 at 8-9, 28-30; 11 at 3-6. Petitioner contends that Juror No. 3 "tainted his right to an impartial jury" by withholding relevant information during voir dire and considering extraneous information during deliberations. Id. More specifically, Petitioner contends that Juror. No. 3 failed to disclose his place of employment (a prison) and falsely answered that he had no friends in law enforcement. Id. In addition, Petitioner contends that Juror. No. 3 considered his personal knowledge of prison jail cell doors during deliberations. Id. Respondents contend that the state court's decision was not contrary to, or involved an unreasonable application of, clearly established federal law. ECF No. 9-1 at 16.

The California Supreme Court denied the petition without citation to authority so this Court must "look through" the silent denial to consider the appellate court's reasoning. Ylst, 501 U.S. 804 n.3. In denying Petitioner's claim that Juror No. 3 committed misconduct during voir dire, the appellate court stated:

> Moreno's principal complaint arises from a conversation defense counsel had with Juror No. 3 following the verdict. According to counsel's statement he asked the juror what he might have done to obtain a better result for his client. Among other things, the juror is alleged to have told defense counsel he did not ask the right questions during jury selection. The juror pointed out he was asked his occupation, which he correctly answered was as a pharmacist. The juror pointed out he was not asked where he worked, which was the R.J. Donovan California State Prison. Moreno claims the juror lied and/or willfully withheld material information. We disagree.
>
> During jury selection, neither counsel asked any direct questions of Juror No. 3. In its introductory questions the trial court asked all jurors to give

their name, occupation, the occupation of other adults they live with, the age of their children, whether they had previously served as a juror, whether they had any "close friends or relatives" in law enforcement, and whether they believed they could be fair. Juror No. 3. gave his name, occupation as a pharmacist, that he lived alone and had no children, he had previously served as a juror in a civil case, he had no friends or relatives in law enforcement or the legal profession and that he believed he could be fair.

Defense counsel's affidavit in support of the new trial motion asserted the juror had made a number of statements in voir dire, that examination of the reporter's transcript proved to be inaccurate. We have set forth the entirety of Juror No. 3's responses. He was never asked where he worked. Indeed, when the juror was questioned by the court, the jury had not been told that the crime in this case occurred in the county jail. Nor was any juror asked about knowledge of jail operations.

Essentially, Moreno complains that the juror did not volunteer information about the place of his employment, but there would have been no reason for the juror to do so, unless there was something about the place of his employment that caused the juror to believe that he could not be fair. No evidence has been offered at any point in this case that the juror was biased against the defendant, that the juror thought he could not be fair or that the juror took any action to seek out or obtain any information outside of court to use in deliberation.

The conversation with Juror. No. 3 after trial was in the context of the attorney's request for advice on how to do a better job. The juror pointed out the unasked question, which might have been important in jury selection, but did not indicate he personally held any bias. Likewise, there is no evidence in this record that the juror has any "close friends or relatives" in law enforcement. As a pharmacist, he may know correctional officers, but that was not the question asked of him. As far as this record demonstrates, the juror's answers were completely true.

As to Petitioner's second argument, that Juror No. 3 considered extraneous information, the Court of Appeal stated:

Moreno also contends the juror misused information about prison conditions which were not in evidence in this case. The prosecution objected to counsel's affidavit as to the juror's use of information as hearsay. The trial court sustained the objection. There was no sworn statement from the juror, or any other juror about the possible use by the juror of extraneous information. The first step in any analysis of alleged jury misconduct is to determine whether there is any admissible evidence of such behavior. Where the alleged misconduct arises from information considered by the juror, it must be admissible under Evidence Code section 1150. People v. Von Villas, 11 Cal.App.4th 175, 225 (1992); People v. Hord, 15 Cal.App.4th 711, 724 (1993). Here, there is no such information.

First, the hearsay objection is well taken. Certainly counsel's declaration states what counsel allegedly heard, but it is hearsay as to whether, and how the juror might have considered such information. People v. Villagren, 106 Cal.App.3d 720, 729-730 (1980). Further, the defendant's obligation was to present admissible evidence of overt acts or statements that are "objectively ascertainable by sight, hearing or other senses." People v.

> Cissna, 182 Cal.App.4th 1105, 1116 (2010). Moreno has not carried his burden.
>
> The information presented to the court, even if not considered hearsay, does not meet the standard of admissibility. The juror did not say he was influenced by or even considered his personal knowledge of jail procedure. He was responding to requests by counsel as to how to do a better job in the future. In short, there is no "objectively ascertainable action" by the juror, which would permit its use as an exception to the rule of Evidence Code section 1150.
>
> We are also mindful that the credibility of counsel's assertions was questioned in the trial court. His recall of the juror's responses in jury selection was plainly inaccurate. The trial court was entitled to view the remainder of counsel's assertions with some suspicion. Thus, on the record before us there is no basis for the claim of juror misconduct, nor for the attendant claim that such misconduct denied Moreno a fair trial.

Lodgment 7 at 6-9.

### 1. Misconduct During Voir Dire

The Sixth Amendment guarantees criminal defendants the right to a fair trial by a panel of unbiased, indifferent jurors. Irvin v. Dowd, 366 U.S. 717, 722 (1961); see also Turner v. Murray, 476 U.S. 28 (1986). To establish a claim for federal habeas corpus relief on the grounds of juror bias, a petitioner must demonstrate that a dishonest answer was given on voir dire to a material question and that the correct response would have provided a valid basis for a challenge for cause. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984); Hamilton v. Ayers, 583 F.3d 1100, 1107 (9th Cir. 2009).

Here, Petitioner fails to establish that Juror No. 3 dishonestly answered a material question during voir dire. The trial record establishes that the jury venire was asked to identify, among other things, their occupation, whether they had any relatives or friends in law enforcement, and whether there was any reason they could not be fair. Lodgment 1, Vol. 3 at 4-6. In response to these questions, Juror No. 3 stated "I'm a pharmacist," "I have no friends or relatives that are in the law enforcement or legal profession," and that he could be a "fair and impartial juror." Id. at 12-13. At no point during voir dire was Juror No. 3 asked *where* he worked as a pharmacist. See id. at 11-15. In fact, neither the trial court nor counsel asked any questions directly of Juror. No. 3. Moreover, as the state court found, there was no evidence that Juror No. 3. was biased against Petitioner. Because Petitioner

1  has not shown that Juror No. 3 answered any question dishonestly, the state court's decision
2  was not contrary to, and did not involve an unreasonable application of, clearly established
3  federal law. The Court therefore **RECOMMENDS** that Petitioner's claim be **DENIED**.

    2.    Misconduct During Deliberations

The Sixth Amendment affords criminal defendants the right to trial by an impartial jury. The right to a jury trial applies to state criminal trials through the Due Process Clause of the Fourteenth Amendment. See Duncan v. Louisiana, 391 U.S. 145, 149 (1968). Due process requires that the defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it." Smith v. Phillips, 455 U.S. 209, 217 (1982). "When the jury breaches this duty by considering extraneous facts not introduced in evidence, 'a defendant has effectively lost the rights of confrontation, cross-examination, and the assistance of counsel with regard to jury consideration of the extraneous evidence.'" Hughes v. Borg, 898 F.2d 695, 700 (9th Cir. 1990) (quoting Gibson v. Clanon, 633 F.2d 851, 854 (9th Cir. 1980)).

The "near-universal and firmly established common-law rule" in the United States "flatly prohibit[s]" the admission of juror testimony to impeach a verdict except where an "extraneous influence" affected the verdict. Tanner v. United States, 483 U.S. 107, 117 (1987); see also Mattox v. U.S., 146 U.S. 140, 149 (1892) ("on a motion for a new trial on the ground of bias on the part of one of the jurors, the evidence of jurors, as to the motives and influences which affected their deliberations, is inadmissible either to impeach or to support the verdict. But a juryman may testify to any facts bearing upon the question of the existence of any extraneous influence."). "Federal Rule of Evidence 606(b) is grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences." Tanner, 483 U.S. at 121 (citing S. Rep. No. 93-1277, p. 13 (1974), U.S. Code Cong. & Admin. News 1974, p. 7051 (observing that Rule 606(b) "embodied long-accepted Federal law")). Federal Rule of Evidence 606(b), which is the federal counterpart to California Evidence Code section 1150, states:

>  (b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed. R. Civ. P. 606(b). Thus, like section 1150, Rule 606(b) renders affidavits or declarations suggesting jury misconduct inadmissible if they do not demonstrate on their face that extraneous information affected jury deliberations. Id.; see also Hard v. Burlington Northern Railroad, 870 F.2d 1454, 1461 (9th Cir. 1989) ("The type of after-acquired information that potentially taints a jury verdict should be carefully distinguished from the general knowledge, opinions, feelings, and bias that every juror carries into the jury room"). Accordingly, federal courts have properly denied motions for a new trial where such requests are based on juror declarations found to be inadmissible under Rule 606(b). See, e.g., United States v. Bussell, 414 F.3d 1048, 1054-55 (9th Cir. 2005) (agreeing with district court that juror declaration regarding juror speculation that co-defendant had pled guilty were inadmissible under Rule 606(b) and that, therefore, no evidentiary hearing or new trial was warranted); United States v. Rutherford, 371 F.3d 634, 640 (9th Cir. 2004) (upholding district court's denial of new trial because Rule 606(b) barred consideration of declarations stating that jurors ignored court's instructions and discussed defendant's failure to testify); see also Morgan v. Woessner, 997 F.2d 1244, 1261 (9th Cir. 1993) (affirming district court's denial of evidentiary hearing and new trial under Rule 606(b) where jurors revealed during interviews that they wanted to send a message to city hall with their verdict and that they speculated about the plaintiff's attorney's fees during their deliberations).

In the instant case, Petitioner's counsel, Rafael Acosta, filed a declaration with the superior court stating that he spoke with Juror No. 3 at the conclusion of trial and that Juror No. 3 made several statements indicating that he "used personal knowledge to discredit

1 [counsel's] cross examination and closing argument that the injury suffered by [the victim]
2 could not have been bad because the deputy did not disrupt his routine security check."
3 Lodgment 5 at 18-19. However, at the hearing on Petitioner's motion for new trial, the trial
4 court compared the contents of Mr. Acosta's declaration with the trial transcripts and
5 concluded that Mr. Acosta's declaration was inaccurate. Lodgment 1, Vol. 5 at 430-35. The
6 trial court also found Mr. Acosta's declaration to be inadmissible hearsay pursuant to
7 Evidence Code section 1150. Id.

8 In denying this claim on appeal, the state court found that there was no admissible
9 evidence supporting Petitioner's contention that Juror No. 3 considered "extraneous"
10 information during deliberations. Lodgment 7 at 6-9. Moreover, the state court found that
11 even if the statements contained in Mr. Acosta's declaration were *not* hearsay, they would
12 nonetheless be inadmissible since there was no evidence indicating that Juror No. 3
13 considered or was influenced by his familiarity with the prison system. Id.

14 Here, the state court reasonably and properly applied clearly established federal law
15 in denying Petitioner's claim. Mr. Acosta's declaration was inadmissible under Evidence Code
16 section 1150, California's counterpart to Federal Rule of Evidence 606(b). In addition, the
17 record supports the trial court's determination that parts of counsel's declaration were
18 inaccurate. Finally, there is no legal support for Petitioner's argument that Juror No. 3's
19 work experience and/or familiarity with the prison system "must have tainted" Petitioner's
20 right to a fair and impartial jury. See Hard, 870 F.2d at 1462 ("It is expected that jurors will
21 bring their life experience to bear on the facts of a case.")

22 Because the state court's denial of Petitioner's juror misconduct claim was not
23 contrary to, or an unreasonable application of, clearly established federal law, the Court
24 **RECOMMENDS** that Petitioner's second claim be **DENIED**.

25 **C.    Motion to Appoint Counsel**

26 Petitioner also filed a motion requesting appointment of counsel. ECF No. 3. In
27 support, Petitioner states that he "cannot effectively represent himself" and that he "lack[s]
28 the necessary knowledge of the federal law." Id. at 2. Respondents do not address

Petitioner's request for appointment of counsel in their answer.

The Sixth Amendment right to counsel does not extend to federal habeas corpus actions by state prisoners. McCleskey v. Zant, 499 U.S. 467, 495 (1991); Nevius v. Sumner, 105 F.3d 453, 459 (9th Cir. 1996) (noting that there currently exists no constitutional right to appointment of counsel in habeas proceedings); Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986). However, courts may appoint counsel for financially eligible habeas petitioners seeking relief pursuant to 28 U.S.C. § 2254 whenever the court "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B); Terrovona v. Kincheloe, 912 F.2d 1176, 1181 (9th Cir. 1990) (citing 18 U.S.C. § 3006A(a)(2)(B)); Chaney, 801 F.2d at 1196 ("[i]ndigent state prisoners applying for habeas corpus relief are not entitled to appointed counsel unless the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations."). Whether or not to appoint counsel is a matter left to the court's discretion, unless an evidentiary hearing is necessary. Knaubert v. Goldsmith, 791 F.2d 722, 729-30 (9th Cir. 1986) (explaining that the interests of justice require appointment of counsel when the court conducts an evidentiary hearing on the petition.).

The court's discretion to appoint counsel may be exercised only under "exceptional circumstances." Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991). "A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved. Neither of these factors is dispositive and both must be viewed together before reaching a decision." Id. (citations and internal quotation marks omitted).

The Court has reviewed the pleadings submitted by Petitioner in this case and finds that Petitioner has a sufficient grasp of the legal issues involved in this case, and that Petitioner was able to articulate those claims adequately without legal assistance. Under such circumstances, a district court does not abuse its discretion in denying a state prisoner's request for appointment of counsel as it is simply not warranted by the interests of justice.

1  See LaMere v. Risley, 827 F.2d 622, 626 (9th Cir. 1987) (affirming district court's denial of request for appointment of counsel where pleadings demonstrated petitioner had "a good understanding of the issues and the ability to present forcefully and coherently his contentions"). Moreover, the Court finds that there is no basis for an evidentiary hearing so appointment of counsel is not required. Accordingly, Petitioner's Request for Appointment of Counsel is **DENIED.**

## **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition. In addition, Petitioner's motion for appointment of counsel is **DENIED**.

**IT IS ORDERED** that no later than **March 28, 2014**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later that **April 18, 2014**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED: March 4, 2014

*[signature]*

BARBARA L. MAJOR
United States Magistrate Judge